MASTERSON (KIDWELL v.). See Case No. 7,758.

MASTICK (MORGAN v.). See Case No. 9,803.

M A S T I N BANK (ROSENTHAL v.). See Case No. 12,063.

---

## Case No. 9,270.

MASURY v. ANDERSON et al.

[11 Blatchf. 162; 6 Fish. Pat. Cas. 457; 4 O. G. 55; Merw. Pat. Inv. 114.][1]

Circuit Court, S. D. New York.   May 8, 1873.

PATENTS—PAINT CAN — INFRINGEMENT — EQUIVALENT—CLAIM OF PATENT.

1. The letters patent granted to John W. Masury, July 12th, 1859, for "an improvement in paint cans, &c.," the claim of which is, "the construction of a metallic can for hermetically sealing paints and other substances, having attached thereto a rim or ring of thin brass or other soft metal, in such a manner that the top or cover may be removed by severing the said rim or ring of brass or other soft metal with a penknife or other sharp instrument, in the manner and for the purposes herein described and represented, or its equivalent," are valid.

2. The invention covered by such claim consists in placing in one end of a can, and adjacent to the edge of the wall or side of the can, a rim or ring of thin brass or other soft metal, thus forming part of the end of the can, and designed to be cut through, to open the can, and is not anticipated by a can of tin with a band of sheet lead in the outer wall or side of the can,

and encircling the circumference of the can, with each of its two edges soldered to the adjacent tin.

3. It is an infringement of such claim to make a can with one end wholly of thin tin, which can be easily cut at the outer edge of such end.

4. The rights of a patentee depend on the claim of his patent, properly construed, and not on what he may erroneously suppose it covers.

[Cited in McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 78.]

[This was a bill in equity by John W. Masury against William Anderson and Frederick O. Pierce, brought upon letters patent No. 24,748, granted to complainant.]

W. Howard Wait, for plaintiff.
George Harding, for defendants.

BLATCHFORD, District Judge. This suit is founded upon the same letters patent upon which the suit of the same plaintiff against Daniel F. Tiemann and others was brought [Case No. 9,271]. The opinion in that case describes the invention, and sets out the specification and claim. It also states at length the value and use of the patented can.

In this suit, the infringement charged in the bill is the same as in that suit, namely, "that the defendants have made, and caused to be made, for their use, cans embodying the patented invention, and have vended paints and colors put up in cans so constructed." The defendants are shown to have sold cans containing paints made liquid with oil, put up by them in such cans.

The answer in this suit sets up the defence of want of novelty in the invention, as did the answer in the former suit, but adduces, to support such defence, matters not set up in that suit. It avers, among other things, that the plaintiff's invention is described in letters patent No. 11,892, granted in England to Jules Jean Baptiste Martin de Lignac, and dated October 7th, 1847. In the specification of the Lignac patent, which was enrolled April 3d, 1848, the following language is all that is material to this case: "The concentrated milk is then, as quickly as possible, to be filled into vessels made of plate tin, or other suitable material, which will allow of being closed hermetically, and also allow of being treated by heat, as hereinafter explained. The vessels I prefer for this purpose are cylinders, such as are shown at figure 5, and, in order that the upper end or cover may be readily removed by the simple act of cutting, I prefer that lead should be used all around, i. e., as is shown by the drawing. These vessels, being filled quite full with concentrated milk, are allowed to stand for twenty-four hours, when the vessels are soldered all around so as to hermetically close them." An exhibit introduced in evidence by the defendants, as being constructed in accordance with such description, is a cylindrical can made of ordinary sheet tin, some five inches in depth and four inches in diameter, one end of which is composed of a circular

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, reprinted in 6 Fish. Pat. Cas. 457, and here republished by permission.]

shaped piece of tin, formed with a flange something less than a quarter of an inch deep, turned down at the outer circumference of such end. The lower end of such flange is connected with the outer wall or side of the can by a band of sheet lead, a little over one-half of an inch wide, encircling the circumference of the can, the lower part of the band being soldered to the top of the wall or side of the can, and the upper part of the band being soldered to the lower edge of such flange, so as to leave a width of lead of about one-quarter of an inch, between the upper edge of the wall or side of the can and the lower edge of the flange, and to allow the lead to be penetrated and cut in such width around the circumference of the can, and thus the top or end of the can to be separated from the body of the can. This arrangement differs from the plaintiff's invention. The latter consists in placing in one end of the can, and adjacent to the edge of the side or wall of the can, a rim or ring of thin brass or other soft metal, such rim or ring thus forming part of the end of the can. It is shown, by the evidence, that lead is a much more difficult metal to solder than thin brass, owing to the fact that especial preparation is required in order to enable the solder to adhere to the lead, and that the lead is liable to melt when the soldering iron is brought in contact with it, in the process of soldering; and that, for these reasons, it would take a workman a much longer time to manufacture a given number of cans constructed according to the Lignac specification, with a lead band, than it would to make the same number of cans constructed in the same form, but with a brass band in the place of one of lead. It is also shown, that the use of thin brass instead of lead, in such form of can, admits of a neater and more perfect finish. Independently of this, the testimony shows that the plaintiff's can presents several advantages over the Lignac can: (1.) The plaintiff's can, in the size and number of pieces of which it is composed, and in the labor of preparing them and putting them into the form of, and securing them together as, a can, does not differ materially from the simplest form of can used; while, in the Lignac can, the band of lead constitutes a separate and additional piece, requiring additional labor in preparing it and inserting it in the can, and the seams cannot be soldered by machinery, as in the plaintiff's can. (2.) In the plaintiff's can, the force necessary to cut the metal in the end of the can, can be applied in an oblique or vertical direction, and is not required to be applied laterally, as in the Lignac can. The former mode of cutting affords a freer passage to the knife, for the reason that it causes the lips of the opening to spread in different directions; while, in cutting the lead band in the Lignac can, by lateral pressure, both lips of the opening are forced inwards, and they, in turn, bind upon and obstruct the passage of the knife-

blade, so as to render the process of cutting more difficult. (3.) Cutting one end with the can standing on the other end, permits the can to be filled to its entire capacity; while, in the case of the Lignac can, if it be filled above the centre line of the inserted band, the contents will run out in the process of cutting through the band. If the Lignac can be an improvement on the ordinary hermetically sealed can, these advantages made the plaintiff's can a material improvement on the Lignac can, and the advantages thus shown to result from changing the position of the soft or thin metal from the side to the end are sufficient, in my opinion, to sustain the patent, as against the Lignac can.

The defendants prove that the plaintiff has made cans in the form of the Lignac can, but having, in place of the band of lead, a band of brass, and that he placed on such cans labels claiming them to be within his patent.. It is urged, that, by reason of this, the plaintiff is estopped from denying that the Lignac can is the equivalent of his invention. But this view is not tenable. The rights of the plaintiff depend upon the claim in his patent, according to its proper construction, and not upon what he may erroneously suppose it covers. If at one time he insists on too much, and at another on too little, he does not thereby work any prejudice to the rights actually secured to him.

The evidence shows that a can constructed according to the Lignac patent does not accomplish the end sought by it, and is not a can which can be easily opened; and that, even when the plaintiff substituted in it a brass band for one of lead, his customers who used it found it more convenient to open the can by cutting out the hard top by the use of a hammer and a knife, than to do so by cutting through the brass band. Although the inventor of the Lignac can had the general idea of enabling a can to be opened by cutting more easily through a softer or a thinner metal, he did not embody his idea in a form which was practically of any substantial utility, and the means he adopted were substantially different from those adopted by the plaintiff.

The defendants also introduce in evidence, on the question of novelty, a can made wholly of tagger's iron, that is, sheet iron rolled so thin as to be easily cut by a pocket knife, and claim that similar cans had been used by the Pennsylvania Salt Manufacturing Company, for putting up caustic alkali, for some years prior to the date of the plaintiff's patent. These cans were filled by pouring in the alkali in a molten state, and it solidified on becoming cold. The only reason given for using tagger's iron by the witnesses who testify to the use of cans are, that, when tin was used, the heat the cans were subjected to caused the tin to melt, and that iron was less expensive than tin. It also appears, that, previously to July, 1857, while tagger's iron was used for the sides, sheet tin was used

for the bottom and top, showing that the original use of tagger's iron was with no purpose to facilitate the opening of the cans. One witness testifies that the company put up the alkali in broken pieces, in cans made wholly of tagger's iron, but he does not state that they did so previously to the date of the plaintiff's patent, or that he knew of its being put up in that condition, in such cans, prior to such date.

The defendants, at the hearing, asked leave to put in further proof on the question whether the tagger's iron was used with a design to facilitate the opening of the cans, and on the question whether it was practicable to open the cans, when filled with the alkali, by cutting out the top. Leave was given to both parties to put in further proofs on those points. The defendants, however, failed to avail themselves of the leave so granted; but the plaintiff has furnished evidence which conclusively puts to rest all pretensions in favor of such can. He has produced in evidence sheet iron cans containing caustic alkali, of the manufacture of said company, the same being put up by said company in such cans and sold by it, together with the circulars in which the cans were enveloped when sold. These cans are made of sheet iron, not capable of being easily cut with a knife; and their contents consist of a solid mass of alkali, apparently conforming in shape to the capacity of the can. But the circular furnishes conclusive evidence against the claim set up in behalf of this can, in the directions it gives for opening the can, which directions are in these words: "Break up one box of the saponifier into fragments, by striking upon the sides of the box;" and again: "Knock off either end of a pound box of concentrated lye." Moreover, on the whole testimony, it is doubtful whether the tagger's iron actually used by the company before the date of the plaintiff's invention was so thin as to be capable of being cut to facilitate the opening of the can. It is, therefore, not shown that the use of tagger's iron in the manufacture of such cans by said company was a prior use of the plaintiff's invention.

The defendants admit, by stipulation, that they have made and used, for putting up paints and colors, and vending paints and colors put up therein, "cans with one end made wholly of thin tin, which can be easily cut at the outer edge of such end." The plaintiff claims such can to be an infringement of his patent. In the view I take of the patent, if one end of the can is made wholly of thin tin, and thereby the location of the thin or soft metal in such end is secured at the only part of the end where, by the patent, it is required to be, or where it is essential it should be, namely, at the part of the end nearest its outer edge, it is not material whether the metal in the other parts of the end be thick or thin, so far as the plaintiff's invention is concerned. The use of a

plain end of thin metal secures what the patent is designed to accomplish, and in the mode specified in it, by enabling the end to be removed by cutting it out near its outer edge with a knife, while the body of the can may be made of thicker metal, and thus strong, and the thinness of the metal left thin, to be cut, does not interfere with the safe handling and transportation of the can.

There must be a decree for the plaintiff, for a perpetual injunction, and an account of profits, with costs.

[For another case involving this patent see Masury v. Tiemann, case No. 9,271.]